UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
TELESERVICES JAMAICA, LTD.,

                Plaintiff,

   -against-                                    05 Civ. 2241 (LAK)

WEST TELEMARKETING CORPORATION
OUTBOUND, et ano.,

                Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**AMENDED MEMORANDUM OPINION**

    Appearances:

        David L. Braverman
        Richard E. Miller
        BRAVERMAN DANIELS KASKEY LTD.
        *Attorneys for Plaintiff*

        Bruce H. Beckmann
        ROSENSTEEL & BECKMANN LLC
        *Attorneys for Plaintiff*

        Samuel M. Leaf
        DAVIS WRIGHT TREMAINE LLP
        *Attorneys for Defendants*

        Patrick R. Guinan
        ERICKSON & SEDERSTROM, P.C.
        *Attorneys for Defendants*

LEWIS A. KAPLAN, *District Judge.*

This is a diversity action brought on behalf of Teleservices Jamaica, Ltd. ("TJL") against West Telemarketing Corporation Outbound ("West") and West Corporation for allegedly orchestrating a scheme to defraud TJL of its assets. With a few exceptions, the assets of TJL have been in receivership since June 2003 pursuant to the terms of a debenture held by National Investment Bank of Jamaica ("NIBJ"). Defendants move to dismiss on the ground that, under Jamaican law, the persons who brought this action lacked standing to do so because the receiver did not consent to or authorize it.[1]

*Background*

A.  *The Parties*

TJL is a Jamaican company founded in December 2000 for the purpose of providing outsourced telecommunications services from Jamaican facilities to large corporate clients.[2] These services include operating call centers to make telephone solicitations on behalf of clients.[3] West, which is a wholly owned subsidiary of West Corporation, provides similar services.[4] Both defendants are Delaware corporations with their principal places of business in Nebraska.[5]

---

[1] The Court does not consider defendants' other bases for dismissal.

[2] Cpt. ¶¶ 2, 17. TJL's primary place of business is in Jamaica. *Id.* ¶ 2.

[3] *Id.* ¶ 8.

[4] *Id.* ¶¶ 4, 20.

[5] *Id.* ¶¶ 3-4.

B. *West's Alleged Scheme To Obtain Control Over TJL*

In May 2002, TJL and West entered into an agreement pursuant to which TJL would provide telemarketing services to West's clients through TJL's call centers in Jamaica.[6] The agreement, which embodied an initial five-year term, required West to provide TJL, on a monthly basis, with an estimate of the projected call volume to be handled by TJL in the upcoming month.[7]

According to the complaint, West's agreement was part of an elaborate scheme to obtain control of TJL.[8] In order to carry out its scheme, West allegedly made TJL "beholden" to it by, among other things, requiring TJL to sever its relationships with existing clients, make costly changes to infrastructure, and incur unnecessary expenses in hiring and training additional staff.[9] It purportedly induced TJL to do so by promising to send it large call volumes that it ultimately failed to deliver.[10] Its failure "to live up to its promises *vis a vis* the workload grossly and negatively impacted TJL's cash flow problems."[11]

As a final blow, West allegedly sabotaged negotiations between Infotel, a subsidiary

---

[6] *Id.* ¶ 43.

[7] *Id.* ¶ 46.

[8] *Id.* ¶ 25.

[9] *Id.* ¶¶ 30-39.

[10] *Id.* ¶ 24, 27.

[11] *Id.* ¶ 51.

of Verizon, and TJL for the purchase of TJL.[12] The complaint asserts that, around May 2003, West disclosed the negotiations to AT&T, which was a major client of TJL and a competitor of Verizon.[13] In response, AT&T allegedly cancelled TJL's services.[14] This, the complaint asserts, "effectively ended TJL's ability to continue operations."[15]

C.  *The Appointment of a Receiver*

TJL had financed the construction of its call centers with approximately $7.2 million from shareholders and $6.4 million in loans from NIBJ, which received a debenture as security.[16] In June 2003, after the Infotel deal fell part, NIBJ appointed a receiver for the assets of TJL that were charged in the debenture.[17]

On September 9, 2003, TJL, acting through the receiver and NIBJ, sold all of its assets, with a few exceptions, to West.[18]

---

[12] *Id.* ¶¶ 63-64.

[13] *Id.*

[14] *Id.* ¶ 65.

[15] *Id.*

[16] *Id.* ¶ 19.

[17] *Id.* ¶ 66; Wilwerding Aff. Ex. E (debenture).

[18] *See* Wilwerding Aff. Ex. J (asset purchase agreement).


D.  *This Action*

The complaint asserts breach of contract, breach of fiduciary duty, fraud, and other state law claims against West and West Corporation for West's alleged failure to send projected call volumes, its disclosure of the Infotel negotiations, and other conduct.

*Discussion*

A.  *Standard*

On a motion to dismiss for lack of standing, "the district court is authorized to consider matters outside the pleadings and to make findings of fact when necessary."[19] The plaintiff has the burden of establishing standing by a preponderance of evidence.[20]

B.  *Whether the Action May Proceed Absent Consent of the Receiver*

Defendants argue that Jamaican law bars the plaintiff from bringing this action because it lacks the consent or authorization of the receiver.[21]

The Court begins by looking at the powers conferred on the receiver and the assets

---

[19] *First Capital Asset Mgmt. v. Brickellbush, Inc.*, 218 F. Supp. 2d 369, 376-79 & n.6 (S.D.N.Y. 2002) (collecting cases), *aff'd*, 385 F.3d 159 (2d Cir. N.Y. 2004). By order dated June 28, 2005, the Court notified the parties that it might convert the motion to dismiss into one for summary judgment and provided the parties with an opportunity to submit further evidence on the motion.

[20] *See, e.g.*, *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

[21] The parties agree that Jamaican law controls. The Debenture provided that it was to be construed and governed by Jamaican law. *See* Debenture § 31. It is attached as Exhibit E to the Wilwerding Affidavit.

within its charge. Under the terms of the Debenture, TJL charged "all of the undertaking [sic] and assets of [TJL] whatsoever and wheresoever both present and future."[22] Moreover, it granted broad powers to the receiver,[23] including the power to bring actions in the company's name in order to collect property, manage the business, sell property, and enter agreements on behalf of the company.[24] Pursuant to the terms of the debenture, NIBJ appointed an employee of PricewaterhouseCoopers "to be Receiver and Manager of the business, assets and properties of the company charged by the said Debenture upon the terms and subject to powers and provisions . . . contained in the said Debenture."[25]

The parties dispute whether Jamaican law bars this action absent consent or approval of the receiver. They agree that the relevant rules of law were set forth in *Newhart Development Ltd.*

---

[22] *See id.* at 3.

[23] The Debenture provided that "any reference to a receiver shall be deemed to include a reference to the Receiver and Manager." *Id.* § 10.

[24] *See, e.g., id.* § 11(a) (power "to take possession of or collect and get in all of any of the property hereby charged and for that purpose to take any proceedings in the name of the Company"); *id.* § 11(b) (power "to carry on manage or concur in carrying on or managing the business of the Company"); *id.* § 11(k) (power "to sell or otherwise dispose of any property for such consideration as the person exercising this power may think proper"); *id.* § 11(p) (power "to make any arrangement or compromise between the Company and the Debenture Holder or the company and any other person or persons which he may think expedient in the interest of the Debenture Holder"); *id.* § 11(r) (power "to sign any document, execute any deed and do all such other acts and things as may be considered to be incidental or conduct to any of the matters or powers aforesaid or to the realization of this Debenture . . ., and to use the name of the Company for all or any of the purposes aforesaid").

[25] *See* Wilwerding Aff. Exhibit D (appointment of receiver).

*v. Co-operative Commercial Bank Ltd.*[26] There, the plaintiffs were companies in receivership pursuant to a debenture that granted the receiver broad powers to, among other things, initiate proceedings in the name of the company in order to collect assets, carry on or concur in the carrying on of the company's business, and make any arrangements or compromises in the interest of the debenture holder.[27] They issued a writ against the debenture holder, seeking damages for breach of contract. The defendants moved to dismiss on the ground that the receiver had not consented to the suit. The Court of Appeal set aside a lower court order that in substance had dismissed the action. It stated that the general rule that a receiver's power to bring a suit in the name of the company "does not divest the directors of the company of their power, as the governing body of the company, of instituting proceedings in a situation where so doing does not in any way impinge prejudicially upon the position of the debenture holders by threatening or imperilling the assets which are subject to the charge."[28] Otherwise, the interests of the shareholders and other creditors might be unprotected, since the duties of a receiver extend only to the debenture holder.[29] In the case at bar, it concluded that the action did not threaten to diminish the property charged to the debenture holder because the company was indemnified against any liability for the costs of the litigation.[30] But the court

---

[26] [1978] Q.B. 814 (Eng. C.A. 1977). Although *Newhart* is an English case, it was followed by a Jamaican court in *Arawak Woodworking Establishment Ltd. v. Jamaica Development Bank*, 24 Jam. Law Rep. 15 (Sup. Ct. 1987).

[27] *Newhart*, [1978] Q.B. at 817.

[28] *Id.* at 819.

[29] *Id.* at 819-20.

[30] *Id.* at 820-21.

suggested that the outcome would have been different absent the indemnity for costs. "[I]f the result of pursuing [the action] might be that the company would be faced with a liability for costs, or would have to finance the action to the detriment of the debenture holders, the receiver could properly take steps to prevent such an outcome arising."[31]

Here, the receiver did not consent to or authorize this action.[32] In the absence of his consent, plaintiff had the burden of showing that the costs of the litigation would not fall upon the company, thereby threatening to diminish the assets charged in the debenture. It has not done so. Accordingly, plaintiff has failed to prove that it has standing to prosecute this action under Jamaican law.

*Conclusion*

For the foregoing reasons, the motion to dismiss the action for lack of standing [docket item 11] is granted.

SO ORDERED.

Dated: October 19, 2005

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)

---

[31] *Id.* at 820.

[32] *See* Lee Decl. at ¶¶ 4-6.